IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOE RUDY PORTER                                                                                          PLAINTIFF

v.                                    Civil No. 4:23-cv-04049-SOH-MEF

CODY BELLAMY;
DETECTIVE DAKOTA EASLEY;                                                                     DEFENDANTS
LIEUTENANT ED CHATTAWAY

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Joe Rudy Porter ("Porter"), currently an inmate of the Arkansas Department of Corrections, filed this action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of 28 U.S.C. § 1915A(a). Pursuant to § 1915A(a), the Court must screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

### I.     BACKGROUND

Porter filed his original Complaint and Motion for Leave to Proceed *in forma pauperis* ("IFP") on April 28, 2023. (ECF Nos. 1, 2). The Court granted Plaintiff's IFP motion on the same date. (ECF No. 3).

In his Complaint, Porter asserts four claims surrounding his arrest on October 7, 2022, in Texarkana, Arkansas. First, Porter claims Defendants Cody Bellamy, Dakota Easley, and Ed Chattaway tampered with evidence in violation of his Fifth and Eighth Amendment rights. (ECF

No. 1, p. 4). Porter asserts his first claim against Defendants in both their individual and official capacities. Specifically, Porter alleges:

> On 10-07-2022 at Super Valu Foods, Cody Bellamy accused me of shop lifting. He attacked me from behind as I was attempting to leave the store. He called the police and He followed behind me on foot for 2 blocks even when He knew that his allegations were false. He also gave the Police two (2) different descriptions of me and the clothes I was wearing. After being physically assaulted by Cody Bellamy, He had the stores video and camera footage doctored and cut up to only display me leaving the store. I was in the Miller County Detention Center from 10-07-2022 until 04-04-2023 on a Frivolous charge of Aggravated Robbery. Detective Dakota Easley, never investigated the charge against me, he merely assisted with the Video and Camera footage being doctored, and Tampering with the evidence. Lt. Ed Chattaway #910 signed an Affidavit stating that he was the person that did the copying and making of the Electronic Surveillance Tapes, therefore, he destroyed evidence that could have prevented me from the hardships of False Imprisonment. Cody Bellamy and Detective Dakota Easley did in fact give false reports.
>
> Detective Dakota Easley, did not investigate the allegations made by Cody Bellamy about the alleged incident. He never questioned why the surveillance tapes did not show or display the Plaintiff at the Cash Register or the alleged Theft. He omitted statements made by the Plaintiff. Lt. Ed Chattaway #910 doctored the Surveillance tapes and tried to justify that the date and Time stamps were incorrect. Their actions were clearly unfair and unprofessional.

(ECF No. 1, pp. 4-5) (cleaned up).

For his second claim, Porter alleges that Defendants Bellamy, Easley, and Chattaway falsely imprisoned him, violating his Fourth Amendment rights. Porter brings his second claim against all Defendants in their individual and official capacities. The facts of this claim are the same as those involved in his first claim as set forth above. Porter also alleges that the charges from the October 7, 2022, incident were amended on April 4, 2023, from aggravated robbery to aggravated assault because he admitted to pulling a three-inch collapsible knife on Defendant Bellamy during the incident. (ECF No. 1, pp. 6-7). Porter was convicted of aggravated assault on April 4, 2023, and he is now serving his sentence for that conviction. (*Id*., p. 2).

In his third claim, Porter states that Defendant Bellamy made false reports against him in

violation of his Fourth Amendment rights. This third claim is also based on the same set of facts. Porter adds, however, that Defendant Bellamy fabricated the entire shoplifting incident and gave false reports to the police regarding the shoplifting incident. He claims this fabrication and false reporting resulted in his arrest and imprisonment. (ECF No. 1, pp. 8-9).

Porter's fourth claim alleges that Defendants Bellamy and Easley violated his Eighth and Fourteenth Amendment rights by racially profiling him. Porter specifically states:

> I was accused of shoplifting and charged with aggravated robbery and the store employee Cody Bellamy followed behind me for two (2) blocks on foot after his physical attack against me did not stop me from leaving the store. During the walking behind me Cody Bellamy went on a verbal racial tirade about how I had picked the wrong store. Then to justify his actions he gave two (2) different descriptions of video and camera footage of two separate incidents of two different black males who had been involved in incidents at the Super Valu Foods. Det. Dakota Easley #0816, showed total disregard for the fair and impartiality morals that his position as a police detective require. Instead he assisted and attempted to send an innocent black man to prison without affording the Plaintiff the equal protections of law, and when this Detective omitted the Plaintiff's statements about wanting to press charges against Cody Bellamy for physically attacking him. I've been incarcerated since 10-07-22 to present date, just because of the stereo-typical attitude of the people involved.
>
> Detective Dakota Easley showed biasness and unfairness when he failed to investigate this matter because the alleged suspect was a black male in a predominantly black neighborhood. Cody Bellamy displayed his prejudiced and racial attitude when he knew that his allegations against the Plaintiff were false still he continued with his efforts to condemn an innocent black male because he knew his voice would be more credible than a black male accused in a criminal episode.

(ECF No. 1, pp. 10-11) (cleaned up).

Porter seeks compensatory and punitive damages for various alleged injuries, including anguish and grief, loss of family, loss of home, loss of trust of family and peers, lost wages, and revoked parole; he wants Defendants Easley and Chattaway to be "retrained"; and he wants criminal charges to be filed against Defendant Bellamy for assault. (ECF No. 1, p. 9).

## II.     APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief.    28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact."   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).    An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right.    *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988); *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987).    A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'"   *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).    However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim.    *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).    A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claims for relief.    *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2001).

## III.     DISCUSSION

As explained below in detail, the undersigned finds the allegations in Porter's Complaint insufficient to support a plausible cause of action for any official capacity claims, nor a racial profiling claim in violation of the Equal Protection Clause, and it is RECOMMENDED that those

4

claims be DISMISSED WITHOUT PREJUDICE. Sufficient facts have been alleged to allow Porter's other claims to proceed.

### A.     State Actors

As an initial matter, Defendant Bellamy and his employer, Super Valu Foods, are not state actors. To state a claim under Section 1983, the Plaintiff must allege (1) that his constitutional rights were violated, and (2) show that the defendant acted under color of state law in perpetrating the alleged violation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) (private actors can only be liable under Section 1983 if "they are willing participants in a joint action with public servants acting under color of state law.") (internal citations omitted). The Eighth Circuit has specifically addressed whether store employees detaining shoplifters can be liable under Section 1983 as state actors. *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 559 (8th Cir. 1989) (explaining a store employee may be considered a state actor when that store employee is a willful participant in a joint activity with the State or its agents, or when the police detain accused shoplifters without making an independent investigation, or pursuant to a customary plan between the store and the police department) (internal citations omitted); *Hanuman v. Groves*, 41 F. App'x 7, 2002 WL 1362931, *8-9 (W.D. Ark. June 25, 2002) (held a store employee that detains a shoplifter cannot be held liable under Section 1983 unless there is evidence the store and the police department had a pre-arranged or "customary" plan to work together to prosecute shoplifting suspects, or that the store employee was employed by the arresting authority). Here, Porter has alleged that Defendant Bellamy worked in concert with the investigating officers, and that the police defendants made no independent investigation and relied solely on Defendant Bellamy's reports, and these allegations are sufficient to survive § 1915A(a) screening. (ECF No. 1, p. 5).

### B. *Heck* Analysis

An additional initial matter is whether Porter's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a claim for damages arising from "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." 512 U.S. at 486-487. The Supreme Court noted if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed. *Id.* The *Heck* bar has also been applied to claims for injunctive or declaratory relief and damages. *See Smith v. Norris*, 40 F. App'x 305 (8th Cir. 2002) (unpublished); *Rosendahl v. Norman*, 242 F.3d 376 (8th Cir. 2000).

*Heck* is not, however, a complete bar to all claims relating to arrests and convictions. The Supreme Court explained some Section 1983 claims "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment." 512 U.S. at 486-87. In footnote seven, the Supreme Court gave an example of such exception:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. *Id*.

Here, Porter was convicted of aggravated assault when he confessed to pulling a three-inch collapsible knife on Defendant Bellamy during the incident. (ECF No. 1. p. 6). If Porter were successful on any of his claims, it would not call into question his conviction for aggravated assault

6

on Defendant Bellamy because Porter's claims relate to tampering with evidence related to shoplifting, false imprisonment for shoplifting, a false report related to the accusation of shoplifting, and Defendants racially profiling him before accusing him of shoplifting. Accordingly, Porter's conviction of aggravated assault against Defendant Bellamy will not be affected by any ruling in this matter, and therefore, Porter's claims are not *Heck*-barred. *See Moore v. Sims*, 200 F.3d 1170 (8th Cir. 2000) (holding if a successful Section 1983 claims would not demonstrate the invalidity of outstanding criminal judgments, then they should be allowed to proceed).

Even though all of Porter's claims survive the *Heck* analysis, the Court must also determine if he has stated cognizable Section 1983 claims.

### C.   Official Capacity Claims

Porter has failed to state an official capacity claim against any Defendant. Under Section 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id*.

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish that the City of Texarkana

is liable under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, this means Porter must allege a policy or custom of the City of Texarkana contributed to his claimed constitutional violations. He has not done so. Porter's only claims relate to the specific actions of the individual Defendants, and he makes no reference to any policy, procedure, or custom of the City of Texarkana. Accordingly, Porter's claims against the Defendants in their official capacity fail as a matter of law.

### D. Individual Capacity Claims

Porter's first, second, and third claims against the Defendants, in their individual capacity, regarding the tampering with evidence and making false reports to arrest Porter, if proven, state claims upon which relief may be granted.[1] The Eighth Circuit has previously held manufacturing evidence to create probable cause for arrest is a violation of the Fourteenth Amendment. *Livers v. Schenck*, 700 F.3d 340, 354 (8th Cir. 2012).

Finally, Porter's fourth claim, his allegations of racial profiling in violation of his equal protection rights, fails to state a claim upon which relief may be granted. To state a cognizable claim for equal protection violation through selective enforcement of laws, a plaintiff must show (1) the enforcement had a discriminatory effect, and (2) the enforcement was motivated by a discriminatory purpose. *Saunders v. Thies*, 38 F.4th 701, 714 (8th Cir. 2022). Additionally, a plaintiff must "normally prove that similarly situated individuals were not stopped or arrested in

---

1 The Court notes, however, that all of Plaintiff's claims against Defendant Bellamy hinge on whether Plaintiff can prove Defendant Bellamy acted under the color of state law. As explained herein, the undersigned is recommending that Plaintiff's claims against Defendant Bellamy proceed at this stage, but the issue remains as to whether Defendant Bellamy should be considered a state actor.

order to show the requisite discriminatory effect and purpose." *Id*. (quoting *Clark v. Clark*, 926 F.3d 972, 980 (8th Cir. 2019). Porter is a black male. He makes allegations against the Defendants for a "verbal racial tirade" and producing video evidence of two different black males involved in "incidents at the Super Valu Foods." Porter has not, however, alleged that a similarly situated person, who was not a black male, received different treatment by Defendants. Accordingly, Porter has failed to state a cognizable claim for violation of the Equal Protection Clause.

### IV. CONCLUSION

For these reasons, it is RECOMMENDED that:

1. Plaintiff's claims against all Defendants in their official capacity be DISMISSED WITHOUT PREJUDICE for failure to state a claim under 28 U.S.C. § 1915A(b)(1).

2. Plaintiff's claim of racial profiling against all Defendants in their individual and official capacities be DISMISSED WITHOUT PREJUDICE for failure to state a claim under 28 U.S.C. § 1915A(b)(1). And,

3. Plaintiff's first, second, and third claims proceed against Defendant Bellamy, Defendant Easley, and Defendant Chattaway in their individual capacities only.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of June 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

9